E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
ALIX MCKENNA (Cal. Bar No. 295202)
Assistant United States Attorney
General Crimes Section
        1200 United States Courthouse
        312 North Spring Street
        Los Angeles, California 90012
        Telephone: (213) 894-6166
        Facsimile: (213) 894-0141

E-mail:  alix.mckenna@usdoj.gov
Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>            v.<br><br>ARMAND ION,<br><br>            Defendant. | No. 8:22-cr-00145-MWF<br><br>PLEA AGREEMENT FOR DEFENDANT ARMAND ION |

1.   This constitutes the plea agreement between Armand Ion ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

2.   Defendant agrees to:

    a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to count two and count four of the indictment in United States v. Armand Ion, CR No. 8:22-00145-MWF, which charges defendant with bank fraud in violation of 18

*LMB*
07/10/2023

1  U.S.C § 1344(2), and aggravated identity theft, in violation of 18
2  U.S.C § 1028A(a)(1).

3          b.   Not contest facts agreed to in this agreement.

4          c.   Abide by all agreements regarding sentencing contained
5  in this agreement.

6          d.   Appear for all court appearances, surrender as ordered
7  for service of sentence, obey all conditions of any bond, and obey
8  any other ongoing court order in this matter.

9          e.   Not commit any crime; however, offenses that would be
10 excluded for sentencing purposes under United States Sentencing
11 Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not
12 within the scope of this agreement.

13         f.   Be truthful at all times with the United States
14 Probation and Pretrial Services Office and the Court.

15         g.   Pay the applicable special assessment at or before the
16 time of sentencing unless defendant has demonstrated a lack of
17 ability to pay such assessments.

18                      THE USAO'S OBLIGATIONS

19  3.   The USAO agrees to:

20         a.   Not contest facts agreed to in this agreement.

21         b.   Abide by all agreements regarding sentencing contained
22 in this agreement.

23         c.   At the time of sentencing, move to dismiss the
24 remaining counts of the indictment as against defendant.  Defendant
25 agrees, however, that at the time of sentencing the Court may
26 consider any dismissed charges in determining the applicable
27 Sentencing Guidelines range, the propriety and extent of any
28 departure from that range, and the sentence to be imposed.

2

         d.   At the time of sentencing, provided that defendant
demonstrates an acceptance of responsibility for the offenses up to
and including the time of sentencing, recommend a two-level reduction
in the applicable Sentencing Guidelines offense level, pursuant to
U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an
additional one-level reduction if available under that section.

         e.   With respect to Count Two, recommend that defendant be
sentenced to a term of imprisonment no higher than the low end of the
applicable Sentencing Guidelines range, provided that the offense
level used by the Court to determine that range is 18 or higher, and
provided that the Court does not depart downward in offense level or
criminal history category.  For purposes of this agreement, the low
end of the Sentencing Guidelines range is that defined by the
Sentencing Table in U.S.S.G. Chapter 5, Part A.

<u>NATURE OF THE OFFENSES</u>

    4.   Defendant understands that for defendant to be guilty of
the crime charged in count two, that is, bank fraud, in violation of
18 U.S.C. § 1344(2), the following must be true: first, the defendant
knowingly carried out a scheme or plan to obtain money or property
from a financial institution by making false statements or promises;
second, the defendant knew that the statements or promises were
false; third, the statements or promises were material; that is, they
had a natural tendency to influence, or were capable of influencing,
a financial institution to part with money or property; fourth, the
defendant acted with the intent to defraud; and fifth, the financial
institution was federally chartered or insured.

    5.   Defendant further understands that for defendant to be
guilty of the crime charged in count four, that is, aggravated

3

1  identity theft, in violation of 18 U.S.C § 1028A(a)(1), the following
2  must be true: first, the defendant knowingly transferred, possessed,
3  or used without legal authority a means of identification of another
4  person or a false identification document; second, the defendant knew
5  that the means of identification belonged to a real person; and
6  third, the defendant did so during and in relation to bank fraud, in
7  violation of 18 U.S.C. § 1344(2), as charged in Count Two of the
8  indictment.

9                        PENALTIES AND RESTITUTION

10      6.   Defendant understands that the statutory maximum sentence
11 that the Court can impose for a violation 18 U.S.C. § 1344(2), is: 30
12 years imprisonment; a five-year period of supervised release; a fine
13 of $1,000,000 or twice the gross gain or gross loss resulting from
14 the offense, whichever is greatest; and a mandatory special
15 assessment of $100.

16      7.   Defendant understands that the statutory mandatory minimum
17 sentence that the Court must impose for a violation 18 U.S.C.
18 § 1028A(a)(1), as charged in count four of the indictment, is: a two-
19 year term of imprisonment, which must run consecutive to any other
20 sentence of imprisonment imposed, and a mandatory special assessment
21 of $100.

22      8.   Defendant understands, therefore, that the total maximum
23 sentence for all offenses to which defendant is pleading guilty is:
24 32 years imprisonment; a five-year period of supervised release; a
25 fine of $1,000,000 or twice the gross gain or gross loss resulting
26 from the offense, whichever is greatest; and a mandatory special
27 assessment of $200.

28

                                    4

9.  Defendant understands that defendant will be required to pay full restitution to the victims of the offenses to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the counts to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which defendant is pleading guilty; and (b) any counts dismissed pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts.  The parties currently believe that the applicable amount of restitution is approximately $120,120, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

10.  Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

1    11.  Defendant understands that, by pleading guilty, defendant

2    may be giving up valuable government benefits and valuable civic

3    rights, such as the right to vote, the right to possess a firearm,

4    the right to hold office, and the right to serve on a jury.

5    Defendant understands that he is pleading guilty to a felony and that

6    it is a federal crime for a convicted felon to possess a firearm or

7    ammunition.  Defendant understands that the conviction in this case

8    may also subject defendant to various other collateral consequences,

9    including but not limited to revocation of probation, parole, or

10   supervised release in another case and suspension or revocation of a

11   professional license.  Defendant understands that unanticipated

12   collateral consequences will not serve as grounds to withdraw

13   defendant's guilty plea.

14    12.  Defendant and his counsel have discussed the fact that, and

15   defendant understands that, if defendant is not a United States

16   citizen, the conviction in this case makes it practically inevitable

17   and a virtual certainty that defendant will be removed or deported

18   from the United States.  Defendant may also be denied United States

19   citizenship and admission to the United States in the future.

20   Defendant understands that while there may be arguments that

21   defendant can raise in immigration proceedings to avoid or delay

22   removal, removal is presumptively mandatory and a virtual certainty

23   in this case.  Defendant further understands that removal and

24   immigration consequences are the subject of a separate proceeding and

25   that no one, including his attorney or the Court, can predict to an

26   absolute certainty the effect of his conviction on his immigration

27   status.  Defendant nevertheless affirms that he wants to plead guilty

28

1  regardless of any immigration consequences that his plea may entail,

2  even if the consequence is automatic removal from the United States.

3                              FACTUAL BASIS

4       13.  Defendant admits that defendant is, in fact, guilty of the

5  offenses to which defendant is agreeing to plead guilty.  Defendant

6  and the USAO agree to the statement of facts provided below and agree

7  that this statement of facts is sufficient to support pleas of guilty

8  to the charges described in this agreement and to establish the

9  Sentencing Guidelines factors set forth in paragraph 14 below but is

10  not meant to be a complete recitation of all facts relevant to the

11  underlying criminal conduct or all facts known to either party that

12  relate to that conduct.

13       Beginning on a date unknown, but no later than August 4, 2021,

14  and continuing through at least September 8, 2022, in Orange and

15  Ventura Counties, within the Central District of California, and

16  elsewhere, defendant conspired with others and devised and executed a

17  scheme to defraud financial institutions, including Bank of America,

18  as to something of value.  In carrying out the scheme, he made false

19  statements that were material and had a natural tendency to influence

20  a financial institution to part with its money.

21                                Scheme

22       Electronic Benefit Transfer ("EBT") cards are debit cards that

23  were preloaded with state public assistance funds.  EBT cards could

24  be used to withdraw cash at ATMs.

25       Defendant and his co-conspirators installed skimming devices on

26  automated teller machines ("ATM").  A "skimming device" is a device,

27  capable of recording and storing data.  Some skimming devices could

28  be installed inside standalone point-of-sale terminals, such as a gas

station pump, automated teller machine ("ATM"), or any other machine that accepted access device cards as payment, and were designed to intercept data from access devices that were inserted or swiped without the knowledge of the victim cardholder. Cameras installed along with a skimming device would capture keypad entries at point-of-sale terminals, including of a victim cardholder's personal identification number ("PIN").

The information recovered from or transmitted by a skimming device was then encoded onto counterfeit cards and used alone or in conjunction with an authentication feature, such as a PIN, to incur charges or withdraw funds from a victim cardholder's bank, credit card, or EBT account without the victim's consent, knowledge, or authorization. The victim cardholders were real persons.

Defendant would then use these counterfeit cards at Bank of America ATMs throughout Orange County, within the Central District of California. In so doing, defendant represented that he was authorized to access and withdraw money from the victims' accounts, and Bank of America relied on those representations in dispensing money to defendant. In fact, defendant knew that he was not authorized to access these accounts, and he accessed those accounts with the intent to defraud. Defendant's representations that he was authorized to access and withdraw money from these accounts constituted material false statements.

In furtherance of the scheme, defendant committed at least the following acts:

On August 4, 2021, defendant and a co-conspirator installed a skimming device on a Bank of America ATM located in Irvine,

California, along with a device equipped with a camera.  Bank of America is a federally chartered financial institution.

On September 1, 2021, defendant and a co-conspirator attempted to install a skimming device at a Bank of America ATM located in Moorpark, California.

On September 2, 2021, defendant used a counterfeit card encoded with victim J.S.'s Bank of America debit card to make an unauthorized withdrawal of approximately $300 in cash from a Bank of America ATM located in Santa Ana, CA.  In so doing, defendant possessed a means of identification of victim J.S., a real person, including J.S.'s name, account, number, and PIN.  Although defendant knew he possessed means of identification that belonged to a real person, defendant did not know J.S. and did not have J.S.'s permission to withdraw money from J.S.'s account.

Defendant also used a counterfeit card encoded with debit card information belonging to victim R.A., a real person, to check the balance in victim R.A's account without victim R.A.'s authorization. He also used a counterfeit card encoded with debit card information belonging to M.J., a real person, to check the balance on victim M.J.'s account without M.J.'s authorization.

On May 14, 2022, defendant and three other co-conspirators installed an ATM skimming device at a point-of-sale terminal in Madera, California.

Between August 4, 2021, and September 13, 2021, defendant and co-conspirators made balance inquiries or withdrawals on 277 unique cards.  During this time, defendant caused an actual loss of $120,120 from 109 unique cards belonging to more than 10 victims and attempted to cause a loss of $305,254 from 277 unique cards.  Additionally,

1  during a search of his home in September 2022, defendant possessed

2  seven skimming devices, a card encoding device, and twenty debit-type

3  gift cards.

4  <center>SENTENCING FACTORS</center>

5      14.  Defendant understands that in determining defendant's

6  sentence the Court is required to calculate the applicable Sentencing

7  Guidelines range and to consider that range, possible departures

8  under the Sentencing Guidelines, and the other sentencing factors set

9  forth in 18 U.S.C. § 3553(a).  Defendant understands that the

10  Sentencing Guidelines are advisory only, that defendant cannot have

11  any expectation of receiving a sentence within the calculated

12  Sentencing Guidelines range, and that after considering the

13  Sentencing Guidelines and the other § 3553(a) factors, the Court will

14  be free to exercise its discretion to impose any sentence it finds

15  appropriate between the mandatory minimum and up to the maximum set

16  by statute for the crimes of conviction.

17      15.  Defendant and the USAO agree to the following applicable

18  Sentencing Guidelines factors:

19    Base Offense Level:          7             U.S.S.G. § 2B1.1

20    10 or More Victims        +2    U.S.S.G. § 2B1.1(b)(2)(A)

21    Use of Authentication Feature  +2    U.S.S.G. § 2B1.1(b)(11)

22    Minor Participant        -2       U.S.S.G. §3B1.2(b)

23

24  Pursuant to U.S.S.G. § 2B1.1(b)(1), the parties agree that there is

25  at least an 8-level increase for a loss in excess of $95,000.

26  Defendant and the USAO reserve the right to argue that additional

27  specific offense characteristics, adjustments, and departures under

28  the Sentencing Guidelines are appropriate.  Specifically, the USAO

<center>10</center>

reserves the right to argue for a higher total loss amount pursuant to U.S.S.G. § 2B1.1(b)(1).  Defendant understands that the Court must sentence defendant to a term of two years'. imprisonment on count four, which must run consecutive to any term of imprisonment imposed for count two.

16.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

17.  Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

## WAIVER OF CONSTITUTIONAL RIGHTS

18.  Defendant understands that by pleading guilty, defendant gives up the following rights:

a.   The right to persist in a plea of not guilty.

b.   The right to a speedy and public trial by jury.

c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.   The right to confront and cross-examine witnesses against defendant.

1        f.   The right to testify and to present evidence in

2  opposition to the charges, including the right to compel the

3  attendance of witnesses to testify.

4        g.   The right not to be compelled to testify, and, if

5  defendant chose not to testify or present evidence, to have that

6  choice not be used against defendant.

7        h.   Any and all rights to pursue any affirmative defenses,

8  Fourth Amendment or Fifth Amendment claims, and other pretrial

9  motions that have been filed or could be filed.

10                WAIVER OF APPEAL OF CONVICTION

11    19.  Defendant understands that, with the exception of an appeal

12  based on a claim that defendant's guilty pleas were involuntary, by

13  pleading guilty defendant is waiving and giving up any right to

14  appeal defendant's convictions on the offenses to which defendant is

15  pleading guilty.  Defendant understands that this waiver includes,

16  but is not limited to, arguments that the statutes to which defendant

17  is pleading guilty is unconstitutional, and any and all claims that

18  the statement of facts provided herein is insufficient to support

19  defendant's pleas of guilty.

20          LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

21    20.  Defendant agrees that, provided the Court, before the

22  imposition of the mandatory consecutive sentence of two years'

23  imprisonment on count four, imposes a term of imprisonment within or

24  below the range corresponding to an offense level of 14 and the

25  criminal history category calculated by the Court, defendant gives up

26  the right to appeal all of the following: (a) the procedures and

27  calculations used to determine and impose any portion of the

28  sentence; (b) the term of imprisonment imposed by the Court; (c) the

1  fine imposed by the Court, provided it is within the statutory
2  maximum; (d) to the extent permitted by law, the constitutionality or
3  legality of defendant's sentence, provided it is within the statutory
4  maximum; (e) the amount and terms of any restitution order, provided
5  it requires payment of no more than $120,120; (f) the term of
6  probation or supervised release imposed by the Court, provided it is
7  within the statutory maximum; and (g) any of the following conditions
8  of probation or supervised release imposed by the Court: the
9  conditions set forth in Second Amended General Order 20-04 of this
10 Court; the drug testing conditions mandated by 18 U.S.C.
11 §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions
12 authorized by 18 U.S.C. § 3563(b)(7).
13      21.  Defendant also gives up any right to bring a post-
14 conviction collateral attack on the convictions or sentence,
15 including any order of restitution, except a post-conviction
16 collateral attack based on a claim of ineffective assistance of
17 counsel, a claim of newly discovered evidence, or an explicitly
18 retroactive change in the applicable Sentencing Guidelines,
19 sentencing statutes, or statutes of conviction.
20      22.  The USAO agrees that, provided (a) all portions of the
21 sentence are at or above the statutory minimum and at or below the
22 statutory maximum specified above and (b) before the imposition of
23 the mandatory consecutive sentence of two years' imprisonment on
24 count four, the Court imposes a term of imprisonment within or above
25 the range corresponding to an offense level of 18, the USAO gives up
26 its right to appeal any portion of the sentence, with the exception
27 that the USAO reserves the right to appeal the amount of restitution
28 ordered if that amount is less than $120,120.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

23.   Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## EFFECTIVE DATE OF AGREEMENT

24.   This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

## BREACH OF AGREEMENT

25.   Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the

14

1  USAO to declare a breach, and defendant shall not be deemed to have

2  cured a breach without the express agreement of the USAO in writing.

3  If the USAO declares this agreement breached, and the Court finds

4  such a breach to have occurred, then: (a) if defendant has previously

5  entered guilty pleas pursuant to this agreement, defendant will not

6  be able to withdraw the guilty pleas, and (b) the USAO will be

7  relieved of all its obligations under this agreement.

8      26.  Following the Court's finding of a knowing breach of this

9  agreement by defendant, should the USAO choose to pursue any charge

10  that was either dismissed or not filed as a result of this agreement,

11  then:

12      a.  Defendant agrees that any applicable statute of

13  limitations is tolled between the date of defendant's signing of this

14  agreement and the filing commencing any such action.

15      b.  Defendant waives and gives up all defenses based on

16  the statute of limitations, any claim of pre-indictment delay, or any

17  speedy trial claim with respect to any such action, except to the

18  extent that such defenses existed as of the date of defendant's

19  signing this agreement.

20      c.  Defendant agrees that: (i) any statements made by

21  defendant, under oath, at the guilty plea hearing (if such a hearing

22  occurred prior to the breach); (ii) the agreed to factual basis

23  statement in this agreement; and (iii) any evidence derived from such

24  statements, shall be admissible against defendant in any such action

25  against defendant, and defendant waives and gives up any claim under

26  the United States Constitution, any statute, Rule 410 of the Federal

27  Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal

28  Procedure, or any other federal rule, that the statements or any

1   evidence derived from the statements should be suppressed or are

2   inadmissible.

3            COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

4                            OFFICE NOT PARTIES

5       27.   Defendant understands that the Court and the United States

6   Probation and Pretrial Services Office are not parties to this

7   agreement and need not accept any of the USAO's sentencing

8   recommendations or the parties' agreements to facts or sentencing

9   factors.

10      28.   Defendant understands that both defendant and the USAO are

11  free to: (a) supplement the facts by supplying relevant information

12  to the United States Probation and Pretrial Services Office and the

13  Court, (b) correct any and all factual misstatements relating to the

14  Court's Sentencing Guidelines calculations and determination of

15  sentence, and (c) argue on appeal and collateral review that the

16  Court's Sentencing Guidelines calculations and the sentence it

17  chooses to impose are not error, although each party agrees to

18  maintain its view that the calculations in paragraph 15 are

19  consistent with the facts of this case.  While this paragraph permits

20  both the USAO and defendant to submit full and complete factual

21  information to the United States Probation and Pretrial Services

22  Office and the Court, even if that factual information may be viewed

23  as inconsistent with the facts agreed to in this agreement, this

24  paragraph does not affect defendant's and the USAO's obligations not

25  to contest the facts agreed to in this agreement.

26      29.   Defendant understands that even if the Court ignores any

27  sentencing recommendation, finds facts or reaches conclusions

28  different from those agreed to, and/or imposes any sentence up to the

1   maximum established by statute, defendant cannot, for that reason,

2   withdraw defendant's guilty pleas, and defendant will remain bound to

3   fulfill all defendant's obligations under this agreement.   Defendant

4   understands that no one -- not the prosecutor, defendant's attorney,

5   or the Court -- can make a binding prediction or promise regarding

6   the sentence defendant will receive, except that it will be between

7   the statutory mandatory minimum and the statutory maximum.

8                        NO ADDITIONAL AGREEMENTS

9        30.   Defendant understands that, except as set forth herein,

10  there are no promises, understandings, or agreements between the USAO

11  and defendant or defendant's attorney, and that no additional

12  promise, understanding, or agreement may be entered into unless in a

13  writing signed by all parties or on the record in court.

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

31.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

E. MARTIN ESTRADA
United States Attorney

*Alix McKenna*                              1/26/24
_____                     _____
ALIX MCKENNA                                Date
Assistant United States Attorney

_____                     1/28/24
ARMAND ION                                  Date
Defendant

_____                     1/18/2024
ANDREW M. STEIN                             Date
Attorney for Defendant Armand Ion


CERTIFICATION OF DEFENDANT

This agreement has been read to me in Romanian, the language I understand best. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering

18

into this agreement.  No promises, inducements, or representations of
any kind have been made to me other than those contained in this
agreement.  No one has threatened or forced me in any way to enter
into this agreement.  I am satisfied with the representation of my
attorney in this matter, and I am pleading guilty because I am guilty
of the charges and wish to take advantage of the promises set forth
in this agreement, and not for any other reason.

_____                    _____
ARMAND ION                                  Date
Defendant

### CERTIFICATION OF INTERPRETER

     I am fluent in the written and spoken English and Romanian
languages.  I accurately translated this entire agreement from
English into Romanian to defendant Armand Ion on this date.

_____                    _____
INTERPRETER                                 Date

### CERTIFICATION OF DEFENDANT'S ATTORNEY

     I am Armand Ion's attorney.  I have carefully and thoroughly
discussed every part of this agreement with my client.  Further, I
have fully advised my client of his rights, of possible pretrial
motions that might be filed, of possible defenses that might be
asserted either prior to or at trial, of the sentencing factors set
forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines
provisions, and of the consequences of entering into this agreement.
To my knowledge: no promises, inducements, or representations of any
kind have been made to my client other than those contained in this

19

1  agreement; no one has threatened or forced my client in any way to

2  enter into this agreement; my client's decision to enter into this

3  agreement is an informed and voluntary one; and the factual basis set

4  forth in this agreement is sufficient to support my client's entry of

5  guilty pleas pursuant to this agreement.

6  _____        _____1/18/24_____

7  ANDREW M. STEIN                          Date
   Attorney for Defendant Armand Ion

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

20